IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2165-BO

| | | |
|---|---|---|
| BILLY R. LAND, | ) | |
|        Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| KENNETH ROYSTER, | ) | |
|        Respondents. | ) | |

Billy R. Land, a state prisoner, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently before the court is respondent's motion for summary judgment. Petitioner timely responded, and the matter is ripe for determination. For the following reasons, the motion is granted.

## BACKGROUND

Petitioner is prisoner of the State of North Carolina. At his trial in Wake County, he was represented by Rudy E. Renfer and on September 25, 2007, he was convicted after a jury trial of possession with intent to sell or deliver marijuana and admitted his status as an habitual felon. He was sentenced to 80-105 months imprisonment. On March 17, 2009, the North Carolina Court of Appeals issued an unpublished opinion finding no error, and on June 17, 2009, the Supreme Court of North Carolina denied discretionary review. State v. Land, 195 N.C. App.786, 2009 WL 677956 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009). On appeal he was represented by Rudolph A. Ashton, III, and Kirby H. Smith, III.

Petitioner dated a pro se motion for appropriate relief (MAR) February 19, 2010, and filed it in the Superior Court of Wake County on February 23, 2010. On April 27, 2010, the MAR was summarily denied. On May 21, 2010, petitioner filed a pro se certiorari petition in the

North Carolina Court of Appeals. On June 8, 2010, certiorari was denied. Petitioner dated his pro se federal habeas application form July 23, 2010, and filed it in this court on July 26, 2010.

## STATEMENT OF FACTS

The North Carolina Court of Appeals summaried the facts of the trial as follows:

On 4 November 2006, Officer J.B. Stroud (Officer Stroud) of the Raleigh Police Department received information from an informant that "a black male wearing a red and blue hat was [standing] at the corner of Oakwood and Tarboro and had a quantity of marijuana in his boot." The informant who spoke with Officer Stroud had provided information to the police approximately 60 times between May and November of 2004 and had provided accurate information in all of his prior dealings with Officer Stroud.

Officer Stroud gave this information to his supervisor, who passed it along to Officer M.E. Glendy (Officer Glendy). Officer Glendy responded to the scene rather than Officer Stroud because Officer Stroud was working "on a different end of [the project]." At the time that he received the information provided by the informant, Officer Glendy was four blocks away from the location specified in that information.

Immediately after receiving the informant's information, Officer Glendy drove to the intersection of Oakwood and Tarboro Streets. At that time, Officer Glendy observed three people standing on the sidewalk, one of whom was wearing a red and blue hat. Officer Glendy then parked at the intersection of Tarboro and Jones Streets and radioed for Officer B.A. Howard (Officer Howard) to meet him. After both officers arrived at the intersection, they got out of their vehicles and approached the location specified by the informant. At that point, the following events transpired:

> [We] indicated to the defendant that we had received a call on him in reference to drug activity. He became very loud, boisterous, agitated[,][and] [v]ery verbally abusive at which point he was seated on the curb.... [Defendant] [h]ad the typical fight or flight syndrome.... I could tell by his actions that he was fixing (sic) to either fight or ... run[.] [He was] looking around, looking for avenues of escape or looking for a way to assault one of us [so that he] could escape.

As a result, Defendant was handcuffed for the officers' protection. According to Officer Glendy, "[e]ven handcuffed he was fidgeting around, [and] did not want to stay still." Officer Glendy searched Defendant's "legs, socks and boot[s]" and discovered "a bag containing ten small individually wrapped plastic bags of marijuana ... in his sock which was tucked into his boot." Defendant also

possessed $34. Officer Glendy told Defendant that he was under arrest. Defendant responded by stating that the policemen "had planted the drugs on him."

Defendant was taken to the Drug Enforcement Unit on Hillsborough Street, where officers searched him again and discovered two additional small bags of marijuana in his other sock. Once again, Defendant stated that he did not possess any drugs and that the drugs had been planted on him. Officer Glendy and the other officers "laughed" at Defendant's assertion, at which point Defendant began to laugh as well. Officer Glendy said, "you have got to be kidding me," at which point Defendant responded, "I have to try something."

On 14 February 2006, Defendant moved *pro se* to suppress the evidence stemming from the officers' search of his person. The trial court subsequently denied Defendant's motion to suppress by means of a written order dated 11 September 2007.

This matter came on for trial on 24 September 2007. On 25 September 2007, Defendant "knowingly, willfully and voluntarily" consented that his counsel would "be allowed to admit to the jury during closing argument that the Defendant is guilty of the lesser included offense of Possession of Marijuana." On the same date, the jury found Defendant guilty of possession with the intent to sell or deliver marijuana. Following the return of the jury's verdict, Defendant stipulated that he had attained the status of an habitual felon. Based upon the jury's verdict and Defendant's stipulation, the trial court entered judgment sentencing Defendant to an active term of imprisonment in the custody of the Department of Correction of 80 to 105 months.

State v. Land, 195 N.C. App.786, 2009 WL 677956 *1-2 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009).

## ISSUES

Petitioner asserts three issues: (1) his Fourth Amendment rights were violated when the North Carolina Court of Appeals failed to review the illegal search and seizure; (2) his Sixth Amendment rights to effective assistance of counsel and to confrontation were violated; and (3) he was subjected to prosecutorial vindictiveness.

3

DISCUSSION

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The Court's review of Land's claims is governed by 28 U.S.C. § 2254(d) which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Id.. Furthermore, there is no requirement the state court specifically cite United States Supreme Court cases as long as

4

the ultimate decision is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Bell v. Jarvis, 236 F.3d 149, 157-158 (4th Cir. 2000); see also Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999); see also Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999).

On appeal, counsel argued: 1) the trial court erred by denying the pretrial pro se motion to suppress evidence obtained as a result of a search of his person; 2) the trial court erred in denying his motion to sequester witnesses; 3) the trial court erred by admitting testimony by Officer Stroud which contained statements made by the confidential informant which was inadmissable hearsay; 4) the trial court erred by allowing Officer Glendy and Offier Howard to testify that defendant exhibited the "typical 'fight or flight' syndrome; " and 5) the trial court erred by allowing the admission of his statement that, "well, I have got to try somethin[g]" in that the denial of his motion to suppress this inculpatory statement made at the police station, at a time when he was in "custody" for purposes of Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694 (1966), was error because no Miranda warnings were given. State v. Land, 195 N.C. App. 786, 673 S.E.2d 884 (N.C. App. 2009). In the MAR, petitioner argued the same claims as he raised in the Court of Appeals with the exception of the Miranda issue. (State Court Record, Exhibit 7)

B.  Illegal Search and Seizure

The Fourth Amendment protects individuals from illegal search and seizures. However, the Supreme Court has held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); see also Wright v. West, 505 U.S. 277, 293 (1992) ("We have also held . . . [evidence obtained in

5

violation of the Fourth Amendment] are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate them at trial or on direct review."); Mueller v. Angelone, 181 F.3d 557, 570 n. 8 (4th Cir. 1999) (acknowledging Stone v. Powell rule that federal habeas courts decline to review state court Fourth Amendment determinations); Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982) ("Stone v. Powell marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has an opportunity to litigate those claims in state court."). Once a district court has found that petitioner had an opportunity to raise a Fourth Amendment claim, "it need not inquire further into the merits of the case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978)

Petitioner raised this issue in a pre-trial suppression hearing denied in a written order, on direct appeal in which the issue was denied,[1] and the MAR wherein the issue was dismissed. (State Court Record, Ex 13); State v. Land, 195 N.C. App.786, 2009 WL 677956 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009), and MAR (State Court Record, Ex. 8) Therefore, petitioner is precluded from bringing the claim in this habeas action. Further, a habeas applicant who is precluded from raising a Fourth Amendment claim under Stone may be entitled to assert an ineffective assistance claim based on counsel regarding

---

[1] The Court of Appeals opinion regarding search and seizure is included, discussed, and cited in the ineffective assistance section of this order.

6

the same. See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Petitioner has in fact raised an ineffective assistance claim on this issue which was addressed and dismissed *supra*.

C.    Ineffective Assistance of Counsel

To support this contention, petitioner asserts that his lawyer was ineffective because he did not object to; (i) the suppression motion evidence when such was introduced at trial; or (ii) the officers' testimony that petitioner exhibited the "typical fight or flight syndrome." Petitioner also contends (iii) his Confrontation Clause rights were violated because the trial court would not allow the confidential informant to be identified and as a result, his hearsay statements were introduced through the officer at trial.

In Strickland v. Washington, 466 U.S. 668, 687-90 (1984), the Supreme Court held that to prove ineffective assistance of counsel a petitioner must show counsel's performance was deficient and that the deficiency prejudiced his case. No such showing has been made in reference to this issue and its subparts.

i.    Suppression Issue

As for the first claim, the Court of Appeals held:

> In his first argument, Defendant contends that the trial court erred by denying his pretrial pro se motion to suppress evidence obtained as a result of a search of his person. Defendant is not, however, entitled to appellate relief from the trial court's order. Since Defendant did not object to the admission of this evidence at the time it was offered at trial, he has waived appellate review of this issue. See State v. Grooms, 353 N.C. 50, 66, 540 S.E.2d 713, 723 (2000) (stating that "a pretrial motion to suppress, a type of motion in limine, is not sufficient to preserve for appeal the issue of admissibility of evidence ... and defendant waived appellate review of this issue by failing to object during trial").
>
> Moreover, it is well-established that a warrantless investigative detention and a subsequent search incident to arrest can be based on information supplied by a known informant of proven reliability. State v. Stanley, 175 N.C. App. 171, 622 S.E.2d 680 (2005); State v. Nixon, 160 N.C.App. 31, 584 S.E.2d 820 (2003). The trial court's findings, which have ample record support, demonstrate that the

7

> search at issue here was based on an investigative detention and subsequent arrest justified by information supplied by a known informant of proven reliability that was adequately verified by investigating officers and on inferences reasonably drawn from Defendant's conduct upon being approached by the investigating officers. The presence of such a known and reliable informant, adequate verification of the information supplied by the informant, and the defendant's conduct upon being approached by investigating officers distinguishes this case from cases such as State v. Hughes, 353 N.C. 200, 539 S.E.2d 625 (2000), which involved searches based on information received from anonymous tipsters. As a result, even if we were to reach the merits of Defendant's claim, he would not be entitled to any relief. This assignment of error is overruled.

State v. Land, 195 N.C. App. 786, 2009 WL 677956 *2 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009). In addition, petitioner raised the substance of this claim in his MAR. Judge Rand summarily denied the MAR alternatively on its merits. The MAR court's denial, albeit summary, is an adjudication on the merits. Hartman v Lee, 283 F.3d 190, 194 (4th Cir. 2002) (while a state court may not set out reasons for a decision on the merits, the holding is entitled to deference if independent review of law reveals the result meets 2254(d) standards). Furthermore, in adjudicating this issue the court shall "look through" the summary MAR order to the Court of Appeals' opinion. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (providing that an unexplained order is presumed to be based on the same ground as an earlier or last explained opinion). The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Illinois v. Gate, 462 U.S. 213 (1983) ("totality of circumstances test" for making practical common-sense decision of whether, given all the circumstances including credibility of the informer and the basis of knowledge, there is probable cause); McCray v. Illinois, 386 U.S. 300 (1967) (where probable cause for a warrantless arrest and search is provided by a tip from a reliable informant, neither the Sixth nor the Fourteenth Amendment

8

prohibits a judge, in the exercise of his sound discretion, from refusing to require that the informant's identity be revealed at a suppression hearing);accord <u>United States v. Watson</u>, 423 U.S. 411, 424 (1976) (warrantless arrest permitted if officer has probable cause to believe a felony has been committed, even if committed outside officer's presence); See § 2254(d)(1). Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2). Thus, trial counsel could not have committed a professional dereliction creating a reasonable probability of a different result, as required by <u>Strickland</u>.

    ii.    <u>Fight or Flight</u>

As for the second ineffective assistance of counsel claim, the Court of Appeals held:

> Defendant next argues that the trial court erred by allowing Officer Glendy and Officer Howard to testify that Defendant exhibited the "typical 'fight or flight' syndrome." Because Defendant did not object to the admission of this testimony at trial, he is only entitled to appellate relief in the event that the trial court's failure to act constituted "plain error." We conclude that it does not.
>
> "A reversal for plain error is only appropriate in the most exceptional cases." <u>State v. Duke</u>, 360 N.C. 110, 138, 623 S.E.2d 11, 29 (2005).
>
> Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection.... [T]he defendant could have prevented any error by making a timely objection. Cf. N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).
>
> <u>State v. Raines</u>, 362 N.C. 1, 16, 653 S.E.2d 126, 136 (2007) (quoting <u>State v. Walker</u>, 316 N.C. 33, 39, 340 S.E.2d 80, 83-84 (1986) (citations omitted)).
>
> "A witness may ... testify to a matter [if] evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen.Stat. §

8C-1, Rule 602 (2007). "Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Id. Generally, a witness who is not an expert may testify as to "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." State v. Williams, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987) (quotation omitted). "[A] witness may state the instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Williams, 319 N.C. at 78, 352 S.E.2d at 432 (quotation omitted).

In the instant case, the officers left their vehicles, approached Defendant, and advised him that they had received a call about his drug activity. Defendant became loud and verbally abusive, leading the officers to ask Defendant to seat himself on the curb. Defendant began to look around furtively. Officer Glendy stated that "[he] could tell by [Defendant's] actions that he was [planning] to either fight or ... run[.]" Defendant was "looking for avenues of escape[.]" Officer Howard stated that Defendant was "looking for a place to run or fight[.]" Defendant did not object to any of this testimony at trial.

We conclude that the officers' statements were "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of [Defendant], ... derived from observation of a variety of facts presented to the senses[.]" Williams, 319 N.C. at 78, 352 S.E.2d at 432. These statements were "helpful to a clear understanding of [the officers'] testimony [and the] the determination [of facts] in issue[.]" N.C. Gen.Stat. § 8C-1, Rule 701 (2007). Furthermore, we do not believe that the statements were "so prejudicial" that, absent the admission of the officers' testimony, the jury would have reached a different verdict. As a result, the trial court did not commit plain error by allowing the admission of the challenged testimony. This assignment of error is overruled.

State v. Land, 195 N.C. App.786, 2009 WL 677956 *5-6 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009). In addition, petitioner also raised the substance of this claim in his MAR. Judge Rand summarily denied the MAR alternatively on its merits. As stated above, the MAR court's denial, albeit summary, is an adjudication on the merits. Hartman, 283 F.3d at 194 (while a state court may not set out reasons for a decision on the merits, the holding is entitled to deference if independent review of law reveals the result meets 2254(d) standards). Furthermore, in adjudicating this issue the court shall "look through"

10

the summary MAR order to the Court of Appeals' opinion. Ylst, 501 U.S. at 805 (providing that an unexplained order is presumed to be based on the same ground as an earlier or last explained opinion).

In Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the Supreme Court held that the harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief. In a more recent Supreme Court opinion, the Court held the Brecht's "substantial and injurious effect" standard applied on federal habeas review whether or not the state appellate court found error or applied the "harmless beyond a reasonable doubt" standard. Fry v. Pliler, 551 U.S. 112, 116 (2007). The Court of Appeals made a detailed analysis and found the "statements were not 'so prejudicial' that, absent the admission of the officers' testimony, the jury would have reached a different verdict" and thus that "the trial court did not commit plain error by allowing the admission of the challenged testimony."

The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Brecht. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2). Thus, trial counsel could not have committed a professional dereliction creating a reasonable probability of a different result, as required by Strickland.

    iii.    <u>Hearsay</u>

As for the third ineffective assistance claim, the Court of Appeals held:

Defendant next argues that the trial court erred by admitting testimony by Officer Stroud which contained statements made by the confidential informant.

11

Defendant challenges the admission of this evidence as inadmissible hearsay. We disagree.

The North Carolina Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2007). Out-of-court statements offered for purposes other than to prove the truth of the matter asserted are not hearsay. State v. Call, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). More particularly, statements are not hearsay if they are admitted for the purpose of explaining the subsequent conduct of the person to whom the statement was directed. State v. Coffey, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990).

In the instant case, Defendant contends that the following testimony from Officer Stroud contained inadmissible hearsay: Officer Stroud testified that he received a telephone call from a confidential informant who said that a black male with a red and blue hat would be standing at the corner of Tarboro and Oakwood Streets and that the man had marijuana in his boot. At trial, the court allowed the admission of this testimony subject to the following limiting instruction: Members of the jury, the evidence you are about to hear has been admitted into evidence for a limited purpose. The evidence you are about to hear is not being admitted into evidence to prove the truth of any matter asserted therein, but rather solely for the purpose of then showing this witness' reaction thereto. It is not offered into evidence for substantive purposes. It is not offered into evidence to prove the truth of any matter asserted, but limited solely to show this witness' reaction.

On appeal, Defendant contends that, because he offered to stipulate that the police had received a tip from a confidential informant, the court erred by admitting Officer Stroud's testimony. We disagree with this reasoning. The question for the trial court was not whether the Defendant's stipulation would have been "sufficient" to serve the same purpose sought to be achieved through the admission of the disputed evidence, but rather whether the evidence the State sought to admit was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2007). Here, Officer Stroud's testimony was not offered to prove the truth of the matter asserted, but rather to explain the officers' subsequent actions. Without Officer Stroud's statement, it would have been difficult for jurors to understand why the officers approached Defendant at a time when he appeared to be innocently standing by the roadside. As the prosecutor explained at trial, "it's important for a jury to understand why officers do what they do. They don't approach people and search them out of the blue for no reason at all." We conclude that the testimony regarding the statement made by the confidential informant was not offered to prove the truth of the matter asserted, but rather to "explain the

12

subsequent conduct of the person to whom the statement was directed." Coffey, 326 N.C. at 282, 389 S.E.2d at 56. Specifically, the testimony was admitted for the limited purpose of explaining why the police approached Defendant, and the court properly instructed the jury that this was the sole purpose for which they could consider the evidence. See State v. Gainey, 355 N.C. 73, 86-88, 558 S.E.2d 463, 473 (2002); State v. Young, 166 N.C.App. 401, 406-09, 602 S.E.2d 374, 377-79 (2004). Accordingly, the trial court did not err in allowing the admission of this testimony for non-hearsay purposes.

Defendant also asserts that Officer Stroud's testimony regarding the statements made by the confidential informant violated his constitutional right to confrontation. This claim is not properly before this Court, since the only objection to this testimony that the Defendant lodged at trial relied on the prohibition against the admission of hearsay. Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal. State v. Benson, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988). Furthermore, "admission of nonhearsay 'raises no Confrontation Clause concerns.'" United States v. Inadi, 475 U.S. 387, 398 n. 11, 89 L.Ed.2d 390, 400 n. 11 (1986) (quoting Tennessee v. Street, 471 U.S. 409, 414, 85 L.Ed.2d 425, 431 (1985)); see also State v. Jones, 322 N.C. 406, 414, 368 S.E.2d 844, 849 (1988). Thus, since the challenged testimony was admitted for a non-hearsay purpose rather than for the truth of the matter asserted, the admission of this testimony does not implicate any confrontation-based concerns.

For the foregoing reasons, the associated assignments of error are overruled.

State v. Land, 195 N.C. App.786, 2009 WL 677956 *3-4 (March 17, 2009) (unpublished), disc. review denied, 363 N.C. 378, 679 S.E.2d 837 (2009). Again, petitioner also raised the substance of this claim in his MAR which was summarily denied. As stated above, the MAR court's denial, albeit summary, is an adjudication on the merits. Hartman v Lee, 283 F.3d 190, 194 (4th Cir. 2002). The last paragraph regarding this issue, as quoted above, clearly adjudicates and denies petitioner's Confrontation Clause claim alternatively on its merits. The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., United States v. Inadi, 475 U.S. 387 (1986) and Tennessee v. Street, 471 U.S. 409, 414 (1985). See § 2254(d)(1). Nor is it based on an unreasonable determination of facts in light of the evidence presented in the

state court proceedings. See § 2254(d)(2). Thus, once again trial counsel could not have committed a professional dereliction creating a reasonable probability of a different result, as required by Strickland.

D.    Prosecutorial Vindictiveness

The Supreme Court has held that in order to rise to the level of a due process violation, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quotations and citations omitted). To succeed on a claim of prosecutorial misconduct, petitioner must show that the prosecutor's conduct was improper and that it "prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir.2002). "In reviewing a claim of prosecutorial misconduct, we review the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

Petitioner's claim is that when he requested a probable cause hearing on another possession with intent to sell or deliver marijuana charge, the state put on no evidence during the hearing and dismissed the case. Petitioner insists that the prosecutor then vindictively brought another indictment for the conviction now at issue, so he would face more time in prison if convicted. Petitioner has shown no impropriety by the prosecutor. The fact that petitioner was ultimately convicted of these charges is strong evidence the prosecutor based her decision to bring them on a fair evaluation of the evidence. Petitioner has failed to meet his burden. None of petitioner's assertions demonstrate any improper conduct by the prosecutor nor prejudice to petitioner.

Again, petitioner raised the substance of his claim in his MAR. The MAR court's denial, as discussed above, was an adjudication on the merits. Hartman, 283 F.3d at 194; see also Ylst v. Nunnemaker, 501 U.S. at 805. The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Greer. See § 2254(d)(1). Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2).

E. Certificate of Appealability

Having dismissed the petition, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") Thus, the court reviews whether petitioner is entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of

15

petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

Accordingly, respondent's motion for summary judgment (D.E. # 8) is GRANTED, and the matter is DISMISSED. Thus, all pending motions are DENIED as MOOT (D.E. # 13). Furthermore, the Certificate of Appealability is DENIED.

SO ORDERED, this _1_ day of ~~August~~ September 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE